**Motisola Malikha ABDALLAH, Elvenyia Barton–Gibson, Gregory Allen Clark, George H. Eddings, Jr., Linda Ingram, Ajibola Laosebikan, Kimberly Gray Orton, and Wanda Williams Plaintiffs,**

v.

**The COCA–COLA COMPANY, Defendant.**

**No. CIV. A. 1:98CV3679RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 16, 2001.

Jeffery Bramlett, Homer Lamar Mixon, Joshua F. Thorpe, Steven Rosenwasser, Bondurant Mixon & Elmore, Atlanta, GA, James E. Voyles, DeVille Milhollin Voyles & Wales, Marietta, GA, Robert L. Wiggins, Jr., pro hac vice, Samuel Fisher, pro hac vice, Byron R. Perkins, pro hac vice, Rusty Adams, pro hac vice, Russell W. Adams, pro hac vice, Gordon Silberman Wiggins & Childs, Birmingham, AL, Christopher David Langley, Office of Christopher D. Langley, Norcross, GA, Tricia P. Hoffler, pro hac vice, Maryann Diaz, pro hac vice, Willie E. Gary, pro hac vice, Ginger Jenkins, pro hac vice, Gary Williams Parenti Finney & Lewis, et al., Stuart, FL, Cyrus Mehri, pro hac vice, Pamela Coukos, pro hac vice, Mehri Malkin & Ross, Washington, DC, for Plaintiffs.

Robert Allan Boas, Elizabeth Finn Johnson, The Coca–Cola Company, Atlanta, GA, William A. Clineburg, Jr., Michael Wayne Johnston, Shelly Sharp Blews, King & Spalding, Atlanta, GA, Thomas G. Sampson, Jeffrey Emery Tompkins, Thomas Kennedy Sampson & Pattrson, Atlanta, GA, R. Lawrence Ashe, Jr., Paul Hastings Jonfsky & Walker, Atlanta, GA, for Defendant.

### *ORDER*

STORY, District Judge.

The Court having reviewed the final version of the Notice referenced in the Court's Order of December 22, 2000, hereby finds that the Notice is appropriate. The Coca–Cola Company shall by January 16, 2001, cause the attached Notice to be mailed in the name of the Clerk by First Class Mail to all settlement class members who can be identified by reasonable efforts.

### *NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED CLASS SETTLEMENT AND FAIRNESS HEARING*

TO: ALL AFRICAN–AMERICAN PERSONS EMPLOYED BY THE COCA–COLA COMPANY IN SALARIED (EXEMPT OR NON–EXEMPT) POSITIONS IN THE UNITED STATES AT ANY TIME FROM APRIL 22, 1995 TO JUNE 14, 2000 (THE "SETTLEMENT CLASS").

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY PROCEEDINGS IN THIS LAWSUIT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the December 22, 2000 Order of this Court, that the Class Representatives certified by the Court and The Coca–Cola Company have entered

into a Settlement Agreement resolving the class-wide claims in this case.

A hearing will be held before the Honorable Richard W. Story (the "Fairness Hearing") to determine whether the terms and conditions of the proposed Settlement set forth in the Settlement Agreement dated as of November 16, 2000 are fair, reasonable and adequate and should be approved; and (2) whether final judgment should be entered by this Court.

The Fairness Hearing will be held on May 29, 2001, in Courtroom 2306 of the United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia. **You are permitted but are not required to attend the Fairness Hearing.**

The purpose of this Notice is to inform members of the Settlement Class of their rights and obligations under the Settlement Agreement and to summarize its key provisions. **Please pay particular attention to Parts VI, VII and VIII of this Notice,** which describe what you need to do to receive your monetary award, the procedures you must follow if you choose to opt out or object to the Settlement, and what will happen in the months leading up to and following the Fairness Hearing.

## TABLE OF CONTENTS

I. Background To This Settlement ...........................................1366

II. The Settlement Class, Class Representatives And Class Counsel ...............1367

III. Summary Of Programmatic Relief ........................................1368

 A. Statement of Principle ............................................1368

 B. Board of Directors ...............................................1368

 C. Task Force ....................................................1368

 1. Powers and Duties ...........................................1368

 2. Composition and Tenure ......................................1369

 3. Accountability ..............................................1369

 4. Available Resources ..........................................1369

 5. Interaction with Operational Functions ..........................1370

 D. Coca–Cola's Obligations ..........................................1370

 E. Ombuds Function ...............................................1370

 F. Joint Expert Review .............................................1371

 G. Pay Equity Adjustments ..........................................1371

IV. Summary of Monetary Relief ...........................................1371

 A. Compensatory Damages Fund ......................................1371

 B. Make–Whole Relief Back Pay Fund .................................1372

 C. Promotional Achievement Award Fund ...............................1372

 D. Promotional Claims Procedure .....................................1372

 E. Incentive Bonuses for Affiants ....................................1373

F. Compensation of Class Representatives ...............................1373

G. Attorneys' Fees ...........................................1374

V. Plan of Allocation ...........................................1374

A. Distribution of Compensatory Damages Fund ...........................1374

1. Allocation of Compensatory Damages Fund ........................1374

2. Individual Payment Cap .......................................1374

3. Minimum Award...........................................1374

4. Restricted Common Stock Election ..............................1375

B. Distribution of Back Pay Fund ...................................1375

1. Cash Awards...........................................1375

2. Stock Option Awards .......................................1376

C. Administrative Costs and Taxes ...................................1377

VI. What You Need To Do To Receive Your Award...........................1377

VII. Your Right To Opt Out Or Object To This Settlement .....................1378

A. Procedure for Opting Out .......................................1379

B. Procedure for Objecting...........................................1379

C. Opt–Out Limit ...............................................1380

D. "Most Favored Nations" Clause ...................................1380

VIII. What Happens Next ...........................................1381

IX. How To Obtain Additional Information ...............................1382

## I.

## BACKGROUND TO THIS SETTLEMENT

On April 22, 1999, a complaint seeking to represent a proposed class was filed in the United States District Court for the Northern District of Georgia, claiming that The Coca–Cola Company ("Coca–Cola" or "the Company"), since at least April 22, 1995, had engaged in a pattern and practice of race discrimination in promotions, compensation and performance evaluations and that the Company's employment policies and practices had a disparate impact on African–American employees. The complaint, as amended, alleged violations of Title VII and 42 U.S.C. § 1981.

On June 4, 1999, the Court entered a Scheduling Order limiting the first phase of discovery to whether or not class certification was appropriate. During the course of this discovery, plaintiffs, through their counsel, obtained and reviewed thousands of documents, including Coca–Cola's Affirmative Action Plans, preliminary findings by the Office of Federal Contract Compliance Programs, and many internal documents detailing Coca–Cola's human resources policies and practices. Plaintiffs, through their counsel, deposed members of Coca–Cola's senior and human resources

management, including outgoing CEO M. Douglas Ivester and outgoing Vice President of Human Resources, Michael Walters, and obtained affidavits from over 150 current and former employees of Coca-Cola regarding alleged race discrimination at the Company. Plaintiffs, through their counsel, worked with an expert labor economist who performed sophisticated statistical analyses of Coca-Cola's human resources database to assess the impact of the Company's employment practices on the promotion, compensation and evaluation rates of African-Americans as opposed to white employees.

An Amended Complaint was filed on January 12, 2000, which Coca-Cola answered on February 4, 2000, denying all alleged wrongdoing or liability.

On January 25, 2000, without delaying the lawsuit, the Court ordered the parties to engage in a non-binding, confidential mediation with a Court-appointed neutral mediator. Mediation began on April 11, 2000.

Plaintiffs were required to file their motion for class certification by June 14, 2000. At approximately 4:00 p.m. on June 14, the mediation parties entered into a binding Settlement in Principle resolving this case. Over the next several months, the mediation parties completed a formal Settlement Agreement reflecting the terms of the Settlement in Principle. This process included a binding arbitration procedure conducted by highly qualified experts to determine the amount of back pay necessary to make the Settlement Class whole for disparities in compensation and promotions during the liability period. On November 15, 2000, the mediator informed the Class Representatives and Coca-Cola of the result of this proceeding.

The Court preliminarily approved the Settlement on December 22, 2000 and directed that this Notice be sent to members of the Settlement Class.

## II.

## THE SETTLEMENT CLASS, CLASS REPRESENTATIVES AND CLASS COUNSEL

The Court has conditionally certified the following Settlement Class for purposes of this Settlement:

**All African-American persons employed by Defendant Coca-Cola in salaried exempt and non-exempt positions (commonly referred to as "Associates" by Defendant) in the United States at any time from April 22, 1995, to June 14, 2000, including, but not limited to, current or former salaried employees of the Corporate Office, Coca-Cola USA, and Minute Maid.**

In the above Settlement Class definition, "African-American persons" means persons who designated themselves to Coca-Cola as "Black" or "African-American," in accordance with the EEOC's Race/Ethnic Identification Form. Employees whose pay rate is specified on an hourly rather than an annual basis (e.g., manufacturing employees) are not within the defined Settlement Class; neither are employees of bottlers such as Coca-Cola Enterprises, Inc.

The Court has conditionally certified Plaintiffs Elvenyia Barton-Gibson, George H. Eddings, Linda Ingram and Kimberly Gray Orton as Representatives of the Settlement Class ("Class Representatives").

The Court has conditionally certified the following counsel as Class Counsel for purposes of this Settlement: Cyrus Mehri, Pamela Coukos and Gouri Bhat of Mehri, Malkin & Ross, PLLC; Jeffrey O. Bramlett, H. Lamar Mixson, Joshua F. Thorpe and Steven J. Rosenwasser of Bondurant, Mixson & Elmore, LLP; James E. Voyles of Deville, Milholin, Voyles & Wales; and Robert L. Wiggins, Samuel Fisher and Byron R. Perkins of Gordon, Silberman, Wiggins & Childs, PC. Mr. Mehri, Mr. Mixson and Mr. Bramlett have been designated Co-Lead Counsel.

Class Counsel have concluded that settling this action under the terms of the

Settlement Agreement is in the best interests of the Settlement Class. This conclusion is based on factors such as the time and expense necessary to prosecute this action through trial; the uncertainties of outcome in this type of complex litigation; the all but certain appeal of a class certification decision whether or not successful; and the likely appeal of any trial judgment, collectively resulting in years of additional litigation; and the substantial and unprecedented benefits conferred by this Settlement.

Coca–Cola, while denying all wrongdoing and liability to the Settlement Class and relying on those provisions of the Settlement Agreement which state that no fault or liability should be construed from its terms, nevertheless desires that this action be dismissed under the terms of the Settlement Agreement to avoid further expense and burdensome litigation.

## III.

## SUMMARY OF PROGRAMMATIC RELIEF

Under the Settlement Agreement, Coca–Cola has agreed to substantial programmatic changes designed to ensure that the Company will treat all employees fairly. These reforms—which include the establishment of an independent Task Force to oversee Coca–Cola's compliance with the Agreement and appropriate salary adjustments to eliminate non-job-related pay disparities that have an adverse impact on African–American employees—span the Company from top to bottom and will require directors, officers and managers at Coca–Cola to consider diversity in all relevant aspects of their work.

### A. *Statement of Principle*

The programmatic remedies secured by the Settlement grow out of the following Statement of Principle—or "gold standard"—that defines the core objectives of the Settlement:

> The Coca–Cola Company commits to excel among Fortune 500 Companies in promoting and fostering equal opportunity in compensation, promotion, and career advancement for all employees in all levels and areas of the business, regardless of race, color, gender, religion, age, national origin, or disability, and to promote and foster an environment of inclusion, respect and freedom from retaliation. The Company recognizes that diversity is a fundamental and indispensable value and that the Company, its shareholders and all of its employees will benefit by striving to be a premier "gold standard" company on diversity. The Company will set measurable and lawful business goals to achieve these objectives during the next four years.

### B. *Board of Directors*

The Settlement requires Coca–Cola's Board of Directors to review and remain informed about the Company's progress toward achieving diversity goals and to establish a schedule for receiving formal reports from the Board's Public Issues and Diversity Review Committee, from the Task Force and from the Human Resources Division.

The Settlement requires the Public Issues and Diversity Review Committee to provide briefings to the Committee on Directors in connection with that committee's routine process of selecting candidates for the Board of Directors.

Under the Settlement Agreement, the Compensation Committee of the Board of Directors will consider the Company's performance regarding the objectives of diversity progress, equal employment opportunity compliance, and compliance with this Settlement in determining whether or not Company officers have met their business objectives. Further, the Public Issues and Diversity Review Committee will provide input into the process by which elected officers are compensated.

### C. *Task Force*

#### 1. Powers and Duties

The Settlement establishes a Task Force to ensure fair, equitable and effective im-

plementation of the Settlement Agreement and to provide independent oversight of the Company's diversity efforts and compliance with the Statement of Principle and the terms of the Agreement. The Task Force has meaningful and substantial powers to review, oversee and monitor all existing Coca–Cola U.S. employment and human resources policies, practices and procedures, as well as the effectiveness of the programmatic provisions of the Settlement Agreement. The Task Force has independent investigatory authority. The Task Force will evaluate and monitor the effectiveness of all of the programmatic relief implemented by Coca–Cola.

**Coca–Cola will implement Task Force recommendations unless the Company seeks and obtains judicial relief.** To obtain judicial relief, Coca–Cola must demonstrate, by a preponderance of the evidence, that the Task Force recommendation, in whole or in part, involves the application of unsound business judgment, is technically not feasible, or is not cost-effective. The Task Force may use counsel, including Class Counsel, if the Company seeks judicial involvement to resist a Task Force recommendation.

The Task Force will have access to all non-privileged and relevant books, data, documents and other sources of information, and may communicate with any Coca–Cola officer or employee directly or through anonymous surveys, focus groups and other appropriate forms of communication.

The Task Force will have oversight of the distribution of money out of the Promotional Achievement Award Fund and oversight of the funds spent by Coca–Cola on pay equity adjustments.

2. Composition and Tenure

The Task Force will have seven members: three appointed by Class Counsel; three appointed by Coca–Cola; and one member jointly agreed to by the parties, who will serve as Chairperson. All Task Force members (and any necessary replacements) are subject to Court approval and will be sworn in by the Court. Task Force members will reflect diverse racial, ethnic, gender and geographic attributes. They will have civil rights, diversity, labor, employment, business or legal expertise. The Task Force shall serve at least four years under the Settlement Agreement.

3. Accountability

The Task Force will issue written annual reports to Coca–Cola's CEO and Board of Directors, the Court and Class Counsel; and make annual in person reports to an appropriate committee of the Board of Directors and the CEO. Task Force reports will be made available on the Company's website. The annual reports will include:

- a review and evaluation of Coca–Cola's U.S. employment and human resources policies and practices;
- any statistically significant racial disparities in the Company's practices;
- any relevant deficiencies in the Company's U.S. employment and human resources practices;
- a description of any reforms implemented due to the Settlement;
- an assessment of the Company's compliance with the Settlement Agreement.

Each year, as part of its reporting function, the Task Force will continue to review and evaluate all ongoing U.S. employment policies and practices at Coca–Cola, to monitor the impact and effectiveness of modifications of such policies and practices, and to recommend additional changes necessary to achieve the objectives of the Settlement Agreement.

4. Available Resources

The Task Force may use the resources of Coca–Cola's Human Resources Division whenever appropriate. If necessary, the Task Force may appoint independent consultants to help the Task Force fulfill its mission. Coca–Cola will pay Task Force members an annual salary and will pay all reasonable expenses of the Task Force,

including expenses associated with independent consultants.

### 5. Interaction with Operational Functions

Subject to its obligations under the Settlement Agreement, Coca–Cola will retain full operational authority of its human resources, EEO and legal functions. To the extent feasible, the Task Force shall work in conjunction with the Vice–President of Human Resources, except where such cooperation interferes with the Task Force's duty to objectively monitor, independently investigate or independently report under the Settlement Agreement.

### D. *Coca–Cola's Obligations*

The Settlement requires and empowers the Task Force to ensure that Coca–Cola does each of the following:

- reviews and revises, to the extent necessary, its staffing and evaluation practices;
- reviews and revises, to the extent necessary, its compensation practices to eliminate any non-job-related pay disparities;
- revises and expands the existing computer-based job posting system through at least grade 13;
- monitors all human resources practices;
- ensures that EEO and diversity performance are included in management objectives and used in determining management compensation;
- adopts and implements annual diversity and sensitivity training, and expands other management training programs;
- establishes a mentoring program;
- develops and implements an ombudsperson program;
- evaluates and then revises or replaces the performance evaluation process to bring it into conformity with industry's highest standards;
- makes all special career advancement programs open to all employees in grade 12 and above, and monitors those programs for a diverse pool of candidates;
- ensures that all candidate slates for job openings above grade 12 are diverse and provides an explanation for any non-diverse slates to the Task Force;
- evaluates and revises, to the extent necessary, guidelines for determining merit increases, bonuses and stock options;
- establishes appropriate, measurable companywide goals to enhance representation of African–Americans and other protected groups at all levels and in all areas of the Company where underrepresentation exists;
- submits semi-annual reports to the Task Force on promotions and terminations and annual reports on compensation and performance evaluations;
- evaluates a job registration-of-interest system;
- establishes mechanisms for effective internal oversight of individual managerial decisions regarding compensation, promotion and performance evaluations, and establishes appeal procedures for managerial decisions in these areas;
- complies with Executive Order No. 11246 with respect to Affirmative Action Plans.

### E. *Ombuds Function*

The Settlement requires Coca–Cola, with input from Class Counsel, to appoint or hire an Ombudsperson to ensure that all complaints of discrimination, harassment and retaliation are fully and fairly investigated, according to written guidelines, by adequately trained personnel who will submit written reports on the disposition of each complaint. The Ombudsperson will report directly to the CEO of the Company.

In addition, Coca–Cola has agreed to establish a 1–800 phone number that is

operational around the clock, and to retain an independent entity or individual to receive complaints of discrimination, harassment and/or retaliation through this number. All such complaints will be referred to the Ombudsperson for appropriate action.

### F. *Joint Expert Review*

Class Counsel and Coca–Cola have each selected an independent and highly qualified industrial psychologist to undertake a full review of the Company's human resources policies and practices and to jointly prepare a Report and Recommendation on how best to ensure that those policies and practices are consistent with the Settlement Agreement. The Joint Expert Report and Recommendation is to be submitted to the Task Force within six months of the date the Court enters final approval of the Settlement.

The Task Force will have oversight of the Joint Expert analysis. Coca–Cola will pay reasonable and necessary costs and expenses associated with this analysis, including the reasonable and necessary fees of both the Joint Experts. In its first annual report, the Task Force will include the results of this analysis.

### G. *Pay Equity Adjustments*

The Settlement requires Coca–Cola to make pay equity adjustments that are estimated by the labor economists advising Class Counsel to cost the Company approximately $43.5 million over a period of ten years. This figure includes the estimated impact of any necessary changes to the Company's promotion practices on Settlement Class Member pay. Coca–Cola has agreed to make appropriate compensation adjustments to eliminate non-job-related disparities between African–American and white employees. Implementation of the pay equity adjustments will be subject to review and recommendation by the Task Force and the Joint Experts.

### IV.

## SUMMARY OF MONETARY RELIEF

Under the Settlement Agreement, Coca–Cola has agreed to a total cash settlement of approximately $113 million. This figure *excludes* the cost of the programmatic relief, which Class Counsel estimates to be $36 million over the four-year term of the Task Force, and the pay equity adjustments, which Class Counsel's expert estimates at approximately $43.5 million over ten years.

The cash settlement includes a Compensatory Damages Fund of approximately $58.7 million and a Make–Whole Relief Back Pay Fund of approximately $24.1 million. If the Settlement receives final Court approval, the approximately $82.8 million in these two funds will be distributed to members of the Settlement Class in accordance with the Settlement Agreement and the Plan of Allocation set forth below. In addition, the cash settlement includes a Promotional Achievement Award Fund of $10 million, from which qualified, current African–American employees may receive future awards. Finally, subject to Court approval, the cash settlement includes attorneys' fees of approximately $20.7 million.

Other features of the monetary relief secured by the Settlement are a Promotional Claims Procedure that can be pursued by class members in lieu of a back pay award, and incentive bonuses for persons who executed affidavits in support of the Settlement Class. Subject to Court approval, the Settlement also provides compensation for the Class Representatives for their service to the class and for releasing their individual and class claims.

### A. *Compensatory Damages Fund*

The Settlement creates a Compensatory Damages Fund of approximately $58.7 million to resolve all Settlement Class members' claims for emotional distress, hostile environment, non-wage-related disparate treatment under Title VII and § 1981, and

similar claims. This figure reflects an interest adjustment through March 31, 2001; interest will continue to accrue for the Settlement Class' benefit until the date of final court approval pursuant to the settlement agreement. Part V of this Notice describes the Plan of Allocation for distributing money from the Compensatory Damages Fund.

### B. *Make–Whole Relief Back Pay Fund*

The Settlement also establishes a Back Pay Fund of approximately $24.1 million to make the Settlement Class whole for racial disparities in compensation and promotion. This figure reflects an interest adjustment through March 31, 2001; interest will continue to accrue for the Settlement Class' benefit until the date of final court approval pursuant to the settlement agreement. Class members whose salary grade as of April 22, 1999 (or last salary grade), was 10 or above, will receive some portion of their share of this Fund in the form of stock options. Part V of this Notice describes the Plans of Allocation for distributing both cash and stock option awards from the Back Pay Fund.

### C. *Promotional Achievement Award Fund*

The Settlement establishes a Promotional Achievement Award Fund of $10 million to reward African–American employees who are promoted into positions where African–Americans are underrepresented or underutilized. An award from this Fund will be in addition to all other salary, benefits and bonuses available to the employee.

To earn such an award, an African–American employee promoted into such a position must serve at least twelve months there and receive at least the median performance evaluation rating for that salary grade. Distribution of awards from the Promotional Achievement Award Fund will be subject to recommendation and review by the Task Force and the Joint Experts.

If the entire amount of the Promotional Achievement Award Fund is not distributed within ten years, any money remaining in the Fund after that time will go to § 501(c)(3) institutions in the Atlanta University Complex.

### D. *Promotional Claims Procedure*

The Settlement also establishes an *optional* procedure whereby any class member may give up his or her award from the Back Pay Fund and instead be granted an individual Promotional Claims Hearing on the merits before a U.S. Magistrate Judge. At this hearing, the class member may seek to obtain a promotion to a specific position that he or she claims was discriminatorily denied within the class period and/or seek to be "made whole" for monetary losses which the class member can prove are the result of a specific racially discriminatory promotion decision.

**Class members who choose the optional Promotional Claims Procedure in lieu of a back pay award do not opt out of the Settlement and may still receive their share of the Compensatory Damages Fund.** However, a prevailing (but not a losing) Promotional Claimant waives his or her right to earn awards from the Promotional Achievement Award Fund.

The Promotional Claims Procedure will operate under the following rules:

1. After the Settlement becomes final, members of the Settlement Class will receive a form allowing them to choose the Promotional Claims option, which must be completed and returned within forty-five (45) days, identifying the specific available position which the Claimant asserts he or she did not receive due to race discrimination, the approximate date and, if known, by whom each such opening was filled, and other relevant facts.

2. Settlement Class Counsel are not obligated or expected to represent Promotional Claimants.

3. Each Promotional Claim will be heard solely by a U.S. Magistrate Judge in the Northern District of Georgia, and there will be no appeals from his or her decision.

4. The Federal Rules of Civil Procedure and Local Rules of this Court will apply unless otherwise stated.

5. Each side is permitted up to ten hours of deposition(s), to be allocated as the deposing party may elect.

6. Each side is limited to ten interrogatories, ten requests for production and ten requests for admission, except for good cause.

7. No punitive or compensatory damages may be sought. However, all other Title VII monetary and equitable relief, including individual injunctive relief and attorneys' fees and costs, are available on a "make whole" basis for any promotion determined to have been denied to a claimant on the basis of race within the applicable statutes of limitations. The Claimant retains the burden of proof, and Coca–Cola retains all individual defenses that it may have.

8. Class members who choose the optional Promotional Claims Procedure in lieu of a back pay award will not receive their share of the Make–Whole Back Pay Fund, which will be retained by Coca–Cola.

### E. *Incentive Bonuses for Affiants*

The Settlement provides that each person who provided an executed affidavit to Class Counsel by June 14, 2000 in support of the claims of the Settlement Class is entitled to receive a sum of $3000 for their assistance in prosecuting this action, *in addition* to any other monetary benefits the Affiant receives from the Settlement. Affiant incentive bonuses will be paid out of the Compensatory Damages Fund and are taxable income.

Each disbursal check to an Affiant shall include a letter requesting, but not requiring, that the Affiant permit his or her unredacted affidavit to be furnished to the Ombudsperson, to assist in identifying and addressing areas of perceived discrimination that may exist at the Company. Class Counsel will also provide redacted copies of all other affidavits to the Ombudsperson, after omitting all Affiant names and identifying data. Copies of the complete unredacted affidavits will be provided to the law firm of the Court-appointed mediator, where they will remain throughout the life of the Settlement and be available for subpoena by Coca–Cola if needed. Class Counsel, however, will not reveal the names of Affiants except as set forth above.

### F. *Compensation of Class Representatives*

The Settlement also provides that, subject to Court approval, the Representatives of the Settlement Class may apply for and receive reasonable compensation for their individual claims, class claims and their service to the Settlement Class.

Class counsel have indicated that, throughout this litigation, the Class Representatives—Elvenyia Barton–Gibson, George H. Eddings, Linda Ingram and Kimberly Gray Orton—have provided valuable service to the Class and substantial assistance to Class Counsel in shaping the investigation of Coca–Cola's employment practices, in identifying potential witnesses, in subjecting themselves to risks, costs and the loss of privacy attendant to their status as litigants, in undergoing the discovery procedures of document requests, interrogatories and depositions, in participating actively in the mediation and settlement process and the management of the lawsuit and class counsel, and by serving as advisors to class counsel and as channels of communication for class members.

In compensation for both these services and their individual and class claims, these four Class Representatives will together apply to the court for an award of not more than $300,000 each. Compensation for the Class Representatives will be paid out of the Compensatory Damages Fund

and is subject to Court review and approval.

### G. *Attorneys' Fees*

The settlement provides that, subject to court review and approval, class counsel will receive a fee of approximately $20.7 million plus reimbursement of the expenses advanced to prosecute this lawsuit (including the fees and expenses of expert witnesses and consultants). As of November 30, 2000, Class Counsel's expenses totaled approximately $1,191,000. Class counsel estimates that additional expenses of $350,000 are reasonably foreseeable in order to: (a) bring this settlement through the process of a fairness hearing and final conclusion; and (b) represent the class' interest in monitoring the Company's compliance with the terms of the Settlement. If approved by the Court, the Company will pay the approximately $20.7 million fee directly to class counsel without any offset to its other obligations to the class under the terms of this settlement. If also approved by the Court, the Company will pay class counsel's expenses of litigation, both accrued and anticipated, in the approximate total amount of $1,541,000 directly to Counsel, but will receive a credit in the amount of this payment against the Company's Compensatory Damages Fund obligation.

If approved by the Court, this fee and expense award will settle and resolve all claims for attorneys' fees and expenses relating to and arising during and as a result of this litigation, including all fees and expenses for monitoring compliance with the Settlement Agreement during the life of the Consent Decree.

## V.

## PLAN OF ALLOCATION

### A. *Distribution of Compensatory Damages Fund*

The $58.7 million Compensatory Damages Fund (which will be reduced by affiant incentive bonuses, compensation of Class Representatives and litigation expenses for Class Counsel) shall be distributed among the Settlement Class members in the following manner:

#### 1. Allocation of Compensatory Damages Fund

Each Settlement Class member will be given one point for each full tenth of a year that he or she has been employed by Coca–Cola from the beginning of their employment through June 14, 2000. The amount of the Compensatory Damages Fund will be divided by the total number of points allotted to all class members, to determine the value of each point. The labor economists advising class counsel estimate that the dollar value of each point will be $370.78. Each Settlement Class member will be paid an amount equal to that member's points multiplied by the value of a point, subject to the limits set forth below.

#### 2. Individual Payment Cap

No member of the Settlement Class (except the Settlement Class Representatives) may receive a total gross cash award from both the Compensatory Damages Fund and the Back Pay Fund that exceeds the *lower* of: (1) $150,000, or (2) three times the Settlement Class member's annual base salary as of December 31, 1999, or his or her last annual base salary rate if not still employed by the Company on that date.

Amounts exceeding a Settlement Class member's Individual Payment Cap will be placed back into the Compensatory Damages Fund, and the point value for the remaining Settlement Class members will be recalculated in the manner described above.

#### 3. Minimum Award

Each Settlement Class member will receive a gross amount of at least $1000 from the Compensatory Damages Fund, regardless of his or her point value.

### 4. Restricted Common Stock Election

A Settlement Class member may elect to take up to 100% of his or her payment from the Compensatory Damages Fund in ten-year restricted shares of Coca–Cola stock or their contractual equivalent. The stock will be valued at face value, based on the closing price of the NYSE on Friday of the week the Court enters final approval of the Settlement.

After the Settlement becomes final, members of the Settlement Class will receive a form allowing them to indicate what percentage of their compensatory damages award, if any, each class member elects to be paid in restricted common stock.

No warranties or representations are made about restricted stock or this restricted stock alternative. Class members who elect to take some or all of their share of the Compensatory Damages Fund in restricted common stock should note that if they elect to receive restricted common stock they will be taxed on the fair market value of such restricted stock in the year of the settlement even though such Class Members will be unable to sell any of the restricted common stock during the restriction period in order to pay any such tax obligations. Furthermore, such Class Members should note that the fair market value of the restricted stock will be deemed for settlement purposes to be equal to the fair market value of the common stock of Coca–Cola not subject to any restrictions.

### B. *Distribution of Back Pay Fund*

#### 1. Cash Awards

The cash component of the Make Whole Relief Back Pay Fund shall be distributed among the Settlement Class members in the following manner:

The labor economists advising Class Counsel will assess the existence and extent of racial disparities in the amounts of pay received during the class period by Settlement Class Members relative to their similarly-situated white counterparts by logistical regression analysis taking into account education, work experience, service at Coca–Cola, division, job function, and other objective factors, as well as recognized principles of labor economics. The pay disparities under review will include base salary, bonuses and the value of stock option grants, if applicable. The Make Whole Relief Back Pay Fund will be distributed among class members based on this analysis of pay disparities between class members and their white counterparts.

Several examples of how this allocation method, in conjunction with the allocation method for the Compensatory Damages Fund, would deliver monetary relief to class members may help to explain and illustrate it.

- Employee "A", a high school graduate, did salary grade 4 work in a sales function from September 1998 through June 2000. "A" could expect to receive approximately $2,188.00 from the Backpay Fund, approximately $6,303.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $8,491.00.

- Employee "B", a college graduate, did salary grade 9 sales work from January 1992 through May 1998. "B" could expect to receive approximately $11,912.00 from the Backpay Fund, approximately $23,359.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $35,272.00.

- Employee "C", a high school graduate, did salary grade 5 work in finance and accounting at from October 15, 1990 through June 2000. "C" can expect to receive approximately $12,588.00 from the Backpay Fund, approximately $35,595.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $48,184.00.

- Employee "D", a college graduate, worked in sales at from February 1994 through June 2000. "D" can expect to receive approximately $23,017.00 from the Backpay Fund, approximately

$23,359.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $46,377.00.

- Employee "E", who holds a bachelors degree, worked in sales from November 1987 through June 2000. "E" can expect to receive approximately $33,885.00 from the Backpay Fund, approximately $46,719.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $80,604.00.

- Employee "F", who holds a bachelors degree, worked in finance and accounting from July 1987 through March 2000. "F" can expect to receive approximately $10,353.00 from the Backpay Fund, approximately $47,090.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $57,443.00.

- Employee "G", who holds a professional degree, worked in accounting and finance from June 1989 through June 2000. "G" can expect to receive approximately $33,006.00 from the Backpay Fund, approximately $40,786.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $73,793.00.

- Employee "H" holds a professional degree and worked in the finance and accounting function from October 1987 through June 2000. "H" can expect to receive approximately $44,642.00 from the Backpay Fund, approximately $46,719.00 from the Compensatory Fund, for a total estimated monetary recovery of approximately $91,361.00.

Each of the above examples is subject to the overall caps and stock option allocations in sections V(A)(1) and V(B)(2).

### 2. Stock Option Awards

A portion of the Make–Whole Relief Back Pay Fund will be distributed among the Settlement Class members in the following manner:

Settlement Class members whose salary grade as of April 22, 1999 (or last salary grade at the Company) was Grade 10 or above will receive an appropriate portion of their back pay award in the form of non-statutory Coca–Cola stock options. Stock option back pay will be allocated for each year from 1996 through 1999 that the individual Settlement Class member was at Grade 10 or above for at least six months.

The following schedule determines what percentage of a Settlement Class member's back pay award will be paid in stock options:

| | |
|---|---|
| Grade 10 | 18% |
| Grade 11 | 21% |
| Grade 12 | 24% |
| Grade 13 | 27% |
| Grade 14 | 30% |
| Grade 15 | 33% |
| Grade 16 | 38% |
| Grade 17 | 43% |
| Grade 18 | 48% |
| Grade 19 & over | 53% |

Stock options will be valued according to the applicable Black–Scholes value, based on the year of the option grant:

| Year of Grant | Value | Option Exercise Price |
|---|---|---|
| 1996 | $20.04 | $48.875 |
| 1997 | $26.41 | $59.75 |
| 1998 | $26.64 | $65.875 |
| 1999 | $26.82 | $53.40625 |

The stock options granted under this settlement will have an exercise price equal to the exercise price of options granted in the applicable year. The term of the options will be 10 years, less the time that has elapsed since the time of the applicable grant. If a Settlement Class Member has terminated employment with the Company, he or she must exercise these options within 18 months after the date of final court approval of the Settlement, or six (6) months from termination of employment, whichever is later.

As an example of how remedial stock options will be awarded, assume that a Settlement Class Member who was a Job Grade 12 during the entire period from 1996—1999 is entitled to a back pay award for 1996 of $3,000. This Settlement Class Member would receive options valued at $720 (24% of $3,000), or 36 options based on a Black–Scholes value of $20.02 per option. The exercise price would be $48.875 (the exercise price of options

granted in 1996). While the Settlement Class Member remains employed, the term of the option will be 10 years from the date options were granted in 1996. If the Settlement Class Member is no longer employed by the Company, the option must be exercised within 18 months of the date of final court approval of the Settlement, or six (6) months from termination of employment, whichever is later.

### C. *Administrative Costs and Taxes*

Coca–Cola will pay all costs associated with the administration and distribution of the Settlement Funds.

The Company will withhold each Settlement Class member's share of FICA and Medicare taxes, as well as other applicable income and payroll taxes imposed on the back pay awards, in addition to paying the employer's share of these taxes on amounts deemed to be wages. The compensatory damages, affiant incentive bonus and class representatives bonus awards are taxable income to the recipient but are not subject to payroll withholding. The Company will issue a Form 1099 reporting these amounts. Settlement class members should consult their tax advisors in connection with this settlement, including the exercise of stock options, and concerning any estimated tax payments that may be required or advisable. The Company retains responsibility for its share of all payroll taxes determined to be due on sums paid pursuant to this Agreement. The Settlement Class member retains responsibility for his or her employee share, both to the taxing authority and to the Company in the event the Company has paid such sums in lieu of the Settlement Class member.

## VI.

### WHAT YOU NEED TO DO TO RECEIVE YOUR AWARD

**If this Notice was sent to you by mail, you are considered a member of the Settlement Class.** You do not need to do anything at this time to ensure that you remain in the Settlement Class or are awarded the money you are entitled to under the Settlement. Unless you affirmatively "opt out" of the Settlement Class by the procedure described in Part VII of this Notice, you are automatically included in the class and are entitled to a monetary award.

Coca–Cola will in due course mail to each Settlement Class member written notification of the individual factors that will be used to determine that member's award from the Back Pay Fund and the Compensatory Damages Fund, including but not limited to: (1) the class member's length of service at Coca–Cola according to records provided by the Company; and (2) the class member's 1999 or last year of employment's annualized earnings at Coca–Cola during the Class Period, according to records provided by the Company (the "Individual Factors").

Each Settlement Class member will then have thirty (30) days from the date of such mailing to respond in writing about any disagreement with Coca–Cola's records or his or her Individual Factors and to provide supporting documentation. Class Counsel will attempt to resolve any such disputes through consultation with Coca–Cola. If such disputes cannot be resolved, they will be submitted collectively to a Claims Arbitrator for resolution. The Claims Arbitrator's determinations as to the Individual Factors will be final and binding on all parties.

**To receive a check for your share of the Settlement funds, you must return a properly executed Release of all employment claims against Coca–Cola of any nature whatsoever,** except pending workers' compensation claims or claims based on vested pension rights or previously established rights to retirement or severance benefits.[1] As a part of its overall fairness

---

1. By way of illustration, but not limitation, claims which must be released include: all forms of employment discrimination (*e.g.*, race, color, gender, national origin, hostile work environment, religion, pregnancy, veteran status, age, disability or handicap, harassment, retaliation, sexual preference, marital status), negligent or intentional infliction of

procedure, the Court will approve the specific language of the Release that Settlement Class members will be required to sign to receive money under the Settlement.

**The Releases will be sent to Settlement Class members within forty (40) days of the date the Court enters final approval of the Settlement.** Along with the Release, Settlement Class members will receive forms allowing them to: (1) elect to receive restricted stock shares for a percentage of their award from the Compensatory Damages Fund, and/or (2) elect to pursue the Promotional Claims Procedure in lieu of an award from the Back Pay Fund (see Parts IV and V above for details on these options).

Within ten (10) business days of receiving a returned and properly executed Release and all necessary forms from a member of the Settlement Class, Coca–Cola will mail that class member a check for his or her share of the Compensatory Damages Fund and the Back Pay Fund, less applicable taxes.

Within thirty (30) business days of receiving a returned and properly executed Release and all necessary forms from a member of the Settlement Class, Coca–Cola will mail to any applicable class member a stock option grant agreement, plan document and exercise instructions for any portion of the Back Pay Fund that has been allocated to that person as non-statutory Coca–Cola stock options; and, if applicable, an agreement for the contractual equivalent of restricted stock that the class member has elected to receive instead of cash payment under the Compensatory Damages Fund.

**Settlement Class members have one year from the date the Release was initially mailed to them to properly execute the Release and return it to Coca–Cola, or they will be deemed to have waived their rights to a share of the**

emotional distress or harm, libel, slander, negligent hiring, negligent retention or supervision, assault, battery, invasion of privacy, claims under Title VII, § 1981, Family and

**monetary relief provided by the Settlement.** Any such waived funds will become part of the residual under the Settlement Agreement.

## VII.

## YOUR RIGHT TO OPT OUT OR OBJECT TO THIS SETTLEMENT

You may give up your right to a share of the monetary relief provided by this Agreement by "opting out" of the monetary relief portion of the Settlement under the terms set forth in this Notice. **Class members who opt out of the monetary relief portion of the Settlement may not benefit from the Compensatory Damages Fund, the Back Pay Fund, the Promotional Achievement Award Fund, or the Promotional Claims Procedure described above.** Class members may not opt out of the programmatic relief portion of the Settlement and will benefit from it so long as they are employed by Coca–Cola in the United States.

If you choose to opt out of the monetary relief portion of the Settlement, you will be free to pursue the claims, if any, you may have under applicable law resulting from your employment at Coca–Cola, and Coca–Cola will be free to raise any defenses it has to your claims. While you have a right to opt out, it is not a decision that should be made quickly or without careful consideration of the relative risks and rewards. The proposed settlement provides substantial guaranteed monetary awards without the burden and expense of hiring a lawyer and then proving that you as an individual were a victim of racial discrimination in employment at Coca–Cola within the Statute of Limitations. Under the proposed settlement you will not have to prove any specific amount of damages, which would be your responsibility if you opt out. Under the proposed settlement,

Medical Leave Act, Fair Labor Standards Act, Equal Pay Act and Executive Order No. 11246.

you will receive your monetary award promptly after final court approval is obtained. An individual suit could take three to five additional years to resolve, including appeals. Most individual employment discrimination suits are unsuccessful. In fact, according to The Coca–Cola Company, in the past ten years there has never been a successful individual race discrimination suit against The Coca–Cola Company. All individual race discrimination claims have resulted in either a judgment for the Company or a settlement in an amount substantially less than the average recovery available under this settlement to a Settlement Class member. Moreover, losing plaintiffs are liable for court costs to a winning defendant.

The Court believes that all of these facts are ones which you should weigh carefully in deciding whether or not to exclude yourself from the very substantial and significant monetary benefits of this major proposed settlement.

**Please be aware that it is the position of The Coca–Cola Company that any class member who accepted an enhanced severance package in the Spring 2000 reduction-in-force and executed a release has already waived his or her right to bring an individual legal action against Coca–Cola.** There has been no judicial ruling on this issue. Class counsel takes no position on it.

Any money from the Compensatory Damages Fund or the Back Pay Fund that would have gone to a member of the Settlement Class who has chosen to opt out of the monetary relief portion of the Settlement will be retained by Coca–Cola.

If approved by the Court, the judgment in this case with respect to monetary relief will include all class members who do not request exclusion from that portion of the Settlement, and the judgment with respect to programmatic relief will include all class members.

A. *Procedure for Opting Out*

If you want to opt out of the monetary relief portion of the Settlement, you must send or deliver a written request stating your desire to do so to the following address:

**Coca–Cola Class Action Discrimination Litigation**
c/o Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309

**Your request to opt out must be received no later than March 19, 2001.** (The period from the date of this Notice through March 19, 2001 is the "Opt–Out Period"). If your request to opt out of the monetary relief portion of the Settlement is received by that date, the Court will exclude you from the monetary relief portion of the Settlement.

You *cannot both* opt out of the monetary relief portion of the Settlement and object to the monetary relief portion of the Settlement (as described below); you may only pursue one of those options. **If you attempt both, you will be deemed *not* to have opted out and to be objecting to the monetary relief portion of the Settlement.** If you elect to opt out of all monetary relief provided by this Settlement, you may still object to the programmatic aspects of relief in accordance with the following procedures.

B. *Procedure for Objecting*

Any member of the Settlement Class may, by following the procedures set forth below, object to the programmatic relief portion of the Settlement. Any member of the Settlement Class who has not opted out of the monetary relief portion of the Settlement may, by following the procedures set forth below, object to the monetary relief portion of the Settlement.

**To object to the Settlement, a class member must deliver to *both* Class Counsel and counsel for Coca–Cola, at the addresses listed below: (1) written objections and copies of any supporting papers and briefs and (2) proof of membership in the Settlement Class, and**

must do so by **March 19, 2001. To be valid, such objections must actually be received by both Class Counsel and counsel for Coca–Cola by that date.**

### Coca–Cola Settlement Objections

Joshua F. Thorpe, Esq.
**Bondurant, Mixson & Elmore, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309

*Counsel for the Settlement Class*

- and -

Michael W. Johnston
**King & Spalding**
191 Peachtree Street
Suite 4400
Atlanta, Georgia 30303

*Counsel for The Coca–Cola Company*

Objections to the Settlement and supporting papers (showing proof of service upon the above Counsel) must also be filed with the Office of the Clerk, Room 2211, United States District Court for the Northern District of Georgia, 75 Spring Street, S.W., Atlanta, Georgia, 30303 by March 19, 2001.

**Any member of the Settlement Class who does not make his or her objection to the Settlement known in the manner provided above shall be deemed to have waived that objection and will forever be barred from objecting to the fairness or reasonableness of the proposed Settlement.**

Coca–Cola and Settlement Class Counsel may conduct discovery of objectors, if any, from the time an objection is filed until forty-five (45) days after the deadline for filing objections, or until May 4, 2001, whichever is later, unless extended for good cause.

Any member of the Settlement Class may appear at the Fairness Hearing on May 29, 2001, in person or through counsel, and be heard as to why the proposed Settlement should or should not be approved and why judgment should or should not be entered upon a finding that the Settlement is fair and reasonable. No member of the Settlement Class may appear at the Fairness Hearing and object to the Settlement, however, if he or she has not followed the procedures for objecting described above. Further, in order to appear at the Fairness Hearing, a Settlement Class member and his or her counsel must provide Class Counsel, Coca–Cola's Counsel and the Court with written notice of their intention to appear by March 19, 2001. Class members and counsel who fail to provide such notice will not be permitted to appear at the Fairness Hearing.

Settlement Class members may enter an appearance in this action through counsel of their own choice at their own cost.

### C. *Opt–Out Limit*

If at least two hundred (200) members of the Settlement Class properly "opt out" of the Settlement Class, Coca–Cola shall have the right (but not the obligation) to unilaterally declare the Settlement null and void. If this happens, the Court will revoke its preliminary certification of the Settlement Class.

### D. *"Most Favored Nations" Clause*

Coca–Cola has agreed to give Settlement Class members who remain in the class and do not opt out of the Settlement a status called "most favored nations" treatment. "Most favored nations" treatment works as follows:

*If,* before June 13, 2001:(1) Coca–Cola settles any employment race discrimination claims for compensatory and/or punitive damages with any ten or more Settlement Class members who have opted out of the Settlement and then sued the Company ("Individual Filers"), and (2) Coca–Cola settles those claims for an amount that *on average exceeds the average award* from the Compensatory Damages Fund to non-opting-out class members under the Settlement, *then* the Company will pay such additional damages as needed to raise each class member's award from the Compensatory Damages Fund to an amount

equal to the average damages received by the ten or more Individual Filers.

The result of this "most favored nations" treatment is that, in the unlikely event that numerous Settlement Class members opt out of the Settlement and succeed in settling for more in compensatory and/or punitive damages than the average award from the Compensatory Damages Fund under the Settlement, members of the Settlement Class who did not opt out will benefit from having remained in the class in an amount equal to the Individual Filers.

Individual Filers do not include Settlement Class members who had lawsuits, individual claims, or charges pending against Coca–Cola before June 14, 2000.

## VIII.

### WHAT HAPPENS NEXT

Members of the Settlement Class will receive at least two additional important mailings with respect to this Settlement and should be aware of several key deadlines. The following is a brief summary of important dates to remember:

Within sixty (60) days of the date of this Notice, or by *March 19, 2001,* Settlement Class members who wish to opt out of the monetary relief portion of the Settlement are required to state that desire and to deliver their written opt-out requests according to the procedures described in Part VII of this Notice.

Also within sixty (60) days of the date of this Notice, or by *March 19, 2001,* Settlement Class members who wish to object to the Settlement are required to make that objection known and to deliver their objections according to the procedures described in Part VII of this Notice.

Within ten (10) days of the end of the Opt–Out Period, or by *March 29, 2001,* Coca–Cola will send each non-opting-out Settlement Class member notification of the Individual Factors from its human resources database that will be used to determine that member's monetary award, such as dates of employment, pay grade

and relevant annualized compensation. Each Settlement Class member will then have thirty (30) days, or until **April 30, *2001,*** to respond in writing about any disagreement with these Individual Factors and provide supporting documentation. Failure to respond within this time period will forfeit your right to dispute your Individual Factors, but you will still receive your monetary award.

From the time an objection is filed until (45) days after the deadline for filing objections, or by **May 4, *2001,*** Coca–Cola and Class Counsel may conduct discovery of any objectors.

On *May 29, 2001,* this Court will conduct a Fairness Hearing to evaluate the fairness of this Settlement. You may but are not required to attend the Fairness Hearing.

After the Fairness Hearing, if the Court enters final approval of the Settlement, the following dates will apply:

If the Court's order approving the Settlement is not appealed, within forty (40) days of the Court Approval Date, Coca–Cola will send each non-opting-out member of the Settlement Class: (1) a Release of Claims to be executed, fully and finally waiving all existing employment discrimination claims against the Company; (2) a form to elect a percentage of his/her award in restricted stock, if desired; (3) a form to elect participation in the Promotional Claims Procedure, if desired; and (4) a statement of the formula to be used in establishing the monetary award of that Settlement Class member and the estimated gross amount of the class member's award ("Individual Payment Notice"). Any disputes over the formula and the gross amount of the award will be resolved by a procedure to be outlined in the Individual Payment Notice.

Settlement Class members will have **one year from the date the Release was initially mailed** to return a properly executed Release or will be deemed to have waived their monetary award. Stock election forms must be returned with the Re-

lease or payment solely in cash will result. Promotional Claims forms must be returned within ninety (90) days from the date they are mailed.

Within ten (10) days of receiving a Settlement Class member's properly executed Release and all necessary forms, Coca–Cola will send that class member a check for his or her portion of the monetary relief provided by this Settlement.

**If your mailing address changes before you receive your final monetary award, please notify Class Counsel and Counsel for The Coca–Cola Company in writing at the addresses listed in Part VII of this Notice.**

## IX.

### HOW TO OBTAIN ADDITIONAL INFORMATION

This Notice only summarizes this litigation and the Settlement Agreement; it does not purport to be all-encompassing. For a more detailed statement of the matters involved in this action and the proposed Settlement, you may consult the pleadings, the complete Settlement Agreement and other papers filed in this action, available for inspection at the Office of the Clerk, United States District Court for the Northern District of Georgia, Room 2211, 75 Spring Street, S.W., Atlanta, Georgia during business hours. **Specific inquiries should not be directed to the Clerk's Office or the Court, however.**

All written inquiries by members of the Settlement Class may be directed to:

**Bondurant, Mixson & Elmore, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, GA 30309

-or-

**Mehri, Malkin & Ross, PLLC**
2120 L Street, N.W.
Suite 400
Washington, D.C. 20037
or you may send an e-mail to *info@findjustice.com*

You may call the following toll-free number with questions about the Settlement and your rights and obligations pursuant to this Notice: **1–888–622–2755.** Information about the Settlement is also available at *www.findjustice.com.*